**FLORA, In Re**
**STATE ex FLORA v ALLMAN et**

Ohio Appeals, 2nd Dist, Madison Co

Nos. 135 & 136. Decided April 1, 1938

Chauncey D. Pichel, Columbus, for relator.

Herbert S. Duffy, Attorney General, Columbus, and Frederic V. Cuff, Asst. Attorney General, Columbus, for respondents.

## OPINION

By GEIGER, J.

Two original actions were filed in this court. No. 135 is an application for a writ of habeas corpus, in which the petitioner, Walter Flora states that he is illegally restrained and deprived of his liberty without legal authority by the superintendent of the London Prison Farm, a branch of the Ohio Penitentiary, and prays that a writ issue and that he, upon hearing thereof, be discharged from illegal restraint.

No. 136 is a petition in mandamus. In this petition the relator, Walter Flora, states the various official positions of the several defendants and recites that on May 28, 1931, by a consideration of the Court of Hamilton County, Ohio, he was sentenced to be imprisoned in the Ohio State Reformatory at Mansfield. The order of the court referred to recites in substance that the defendant, having been convicted of entering a bank to commit a robbery with fire arms and also entering a bank to commit a robbery with a recommendation of mercy, "it is therefore ordered and adjudged by the court that the defendant, Walter Flora, be imprisoned and confined in the Ohio State Reformatory, Mansfield, Ohio, and kept at hard labor, but without any solitary confinement, for an intermediat—?— (indeterminate) period and that he pay the costs of this prosecution, etc." This order was entered on May 28, 1931 and in pursuance of it he was transported to the Reformatory on the 28th of May, 1931 and there imprisoned and it is alleged that the judgment rendered against him is in full force and effect and that no error or appeal proceedings were instituted to modify the judgment of conviction and the sentence.

It is further alleged that without proceedings had in any court of law and without notice to him, on April 22, 1936, in violation of his rights and by virtue of an unauthorized and void order of Mrs. Mar-

garet Allman, Director of Public Welfare, one of the respondents, he was removed to the Ohio State Penitentiary and on May 28, by virtue of an unauthorized and void order of the said Margaret Allman, he was removed to the London Prison Farm; that he has asked the respondent, Margaret Allman, to be sent back to the Reformatory, but that she has refused to do so.

Relator further says that the individuals composing the Board of Parole have, over his objection, enrolled him as an inmate of the Ohio Penitentiary and have denied him the benefit of the law, to which he is entitled as an inmate and one legally sentenced to the Reformatory, and has failed to give him the benefit of the rules of elegibility for parole as one sentenced to the Reformatory.

Relator states that the offense was committed in June, 1930, trial was had on May 13, 1931; that the Ohio Legislature, on April 10 passed an act effective August 5, 1931, the first section of which is now §2210 GC, the second section now §2210-1 GC, and that each relates to the caption under which the bill was submitted, but that §§3 and 4, now §§2210-2 and 2210-3 GC, have no reference to the title of the act and are therefore unconstitutional and that said sections do not grant the Director of Public Welfare any right to transfer him from the Reformatory to the Penitentiary but limit his right to action only upon the recommendation of the warden and superintendent.

Relator further claims that the offense of which he is convicted and sentenced predated the effective date of the section, to-wit, August 5, 1931, and alleges that under §2210-2 GC the respondent, Margaret Allman, acted in a way to abridge his rights and did deprive him of his liberty without due process of law, etc., by giving effect to said section, which was effected after relator had entered upon his sentence, and that the Director of Public Welfare could not legally give retroactive effect to said section.

Relator therefore prays that a writ of mandamus may issue requiring Margaret Allman to revoke the order transferring him to the Penitentiary and the Prison Farm, requiring her to remove him from the farm and transfer him to the Reformatory; that the superintendent of the Prison Farm release him; that the board of parole change on their rolls the status of the relator to that of a legal inmate and prisoner of the Ohio State Reformatory and ordering the Board of Parole to grant the relator the benefit of all the rules of eligibility for parole.

To this petition in mandamus the several defendants filed a general demurrer, on the ground that it did not state a cause of action. On oral hearing before this court counsel requested the court to first pass upon the habeas corpus proceeding and if later it appeared to be necessary, that it pass upon the demurrer to the mandamus proceeding.

The court, in examining the matter, has found that the two are so interwoven that it will be economy of time to consider them together. The matter was heard on oral testimony submitted by the prisoner, including various exhibits, wherein are included the order of the respondent, Mrs. Allman, directing that the prisoner be first conveyed to the Penitentiary and at a subsequent date to the London Prison Farm, a branch of the Penitentiary.

It appears from this testimony that the officials having control of the penal institutions have been for some time concerned about the legal status of this young man, inasmuch as they believe and in which belief they were supported by the Attorney General, that the court in sentencing the defendant in the original trial had no right to commit him to the Reformatory but under the provisions of the statute making a special classification for those found guilty of entering a bank for the purpose of robbing the same with fire arms but to whom mercy had been extended by the jury, may only sentence such defendant to the Penitentiary and was not empowered to sentence him to the reformatory. §12441, GC, under which defendant was tried but not sentenced, provides in substance that whoever enters a bank and attempts to commit or commits a felony with fire arms, shall be imprisoned in the Penitentiary during life, providing that:

"If the jury upon the trial of any such indictment as a part of their verdict finds the accused guilty and recommends mercy, the court may sentence the accused to not less than twenty years in the Penitentiary."

It is conceded by the respondents, both in their correspondence and in their oral testimony, that if the prisoner be confined in the Penitentiary it must be for a term not less than twenty years and that this is a heavier sentence than was imposed by the trial judge when he sentenced him

for an indeterminate period to the Reformatory.

Sec 2131 GC provides that the superintendent of the Reformatory shall receive male criminals between the ages of 16 and 30 sentenced to the Reformatory and further, that male prisoners between 16 and 21 convicted of felony, shall be sentenced to the Reformatory instead of the Penitentiary, and that persons between the ages of 21 and 30 may be sentenced to the Reformatory if the court passing sentence deems them amenable to eform methods.

Sec 2132 GC provides that courts imposing sentences to the Reformatory shall make them general and not fixed or limited in their duration and that the term shall be terminated by the Board of Administration, but:

"The term of such imprisonment shall not exceed the maximum term. nor be less than the minimum term provided by law for such felony."

Under the bank robbery section §12441 GC, if there is no recommendation of mercy the imprisonment shall be for life and if there is the court may sentence the accused to not less than twenty years in the penitentiary. These sections were construed in Ex Parte Fleming, 123 Oh St 16, in which it was held that the State may create a new offense, authorizing the court to pass a definite sentence to the Penitentiary for life, or in the event of mercy being recommended, for not less than twenty years and that habeas corpus does not lie to effect the discharge of one under the age of 21 years, who has received a definite sentence to the Penitentiary under the provisions of such section, although a general law passed prior to such new act provides for general sentences of male prisoners between the ages of 16 and 21 to the Reformatory instead of the Penitentiary.

The matter under review in that case was one who was seeking a release by habeas corpus proceedings from the Penitentiary to which he had been committed, although he was between the ages of 16 and 21 and the court held that the Legislature might make a special provision as to the sentence of those violating the section and that the general law applicable to offenders between 16 and 21 does not apply.

We would have been relieved of much of our perplexity had the court stated that §§2131 and 2132 GC do not control instead of do not apply.

It will be observed that §12441 GC provides that the court, after the recommendation of mercy, may sentence the accused to not less than 20 years in the Penitentiary and we might, in that event, under §2131 GC, consistently hold that it was obligatory upon the court to sentence persons between 16 and 21 to the Reformatory instead of the penitentiary and that under §2132 GC such sentence shall be general and not fixed or limited. But in view of the holding of the court in the Fleming case, supra, we must conclude that the bank robber, even though he be █ between 16 and 21 at the time he is sentenced, must be sentenced to the Penitentiary and that the provision, "may sentence the accused to not less than 20 years in the Penitentiary," has application only to the length of time and not to the place of confinement and apparently does not provide for an indeterminate sentence.

In this case the prisoner is not complaining that the sentence, as originally imposed by the trial court, was erroneous and does not seek to escape confinement by avoiding that sentence. He states in his petition in mandamus that said judgment and sentence is, did. and has become final. We are, therefore, not concerned with the effect of an erroneous sentence, but only with the right of the respondent, Mrs. Allman, Director of Public Welfare, to correct it, which she seeks to do and claims to be authorized to do under §2210-2 GC.

Counsel has asserted that §§2210-2 and 2210-3 GC are unconstitutional, in that they have violated the provisions of Article II. §16, providing that no bill shall contain more than one subject, which shall be clearly expressed in its title. Whether or not counsel is correct in this need not engage our attention.

We are, however, concerned with the right of the Director of Public Welfare or any other official to lay an additional burden upon the prisoner by authority granted by any act which did not become effective until after the prisoner had been sentenced. At first it seemed clear to us that the state, with its inherent, sovereign power, to define crimes and fix penalties and to control, through the appropriate departments and boards, the prisoners committed to its various institutions, would have the right to provide, through the functioning of such officials, for the transfer of a prisoner from one institution to the other and for their probation and parole under legislative enactment, such as §§2210 and 2210-1 GC and even though such laws may have

been enacted and become effective after the commission of the crime and sentence imposed upon the convicted party, laws for transfer from one institution to another would not be ex post facto in their operation. We, however, have reached the conclusion that even though the sentence imposed by the trial judge may have inadvertently been in violation of the statute fixing the punishment for bank robbery due to the fact that such action of the trial court stands unreversed and unmodified, any enactment passed subsequent to the sentence imposed which changes the effect of the sentence, even though the same may have been unauthorized and imposes a greater burden or a longer sentence or different conditions controlling parole, is a matter of ex post facto in its operation and violative of the Constitution.

It is admitted on all hands that the transfer of this prisoner from the Reformatory where he was serving an indeterminate sentence to the Penitentiary and from there to the Prison Farm, has imposed burdens upon him and curtailed privileges to which he was entitled under the indeterminate sentence by the trial court. The correspondence of the Director of Public Welfare clearly indicates that she was concerned because this would be the effect of the transfer, but that it was only just in view of the fact that other juvenile bank robbers had been sentenced by other judges under the provisions of §12441 GC to the Penitentiary for definite periods, resulting in their sentence for the same offense being more severe than the unauthorized sentence imposed on Flora.

We are led to this conclusion by the examination of the case of Linsey et v State of Washington, 57 Supreme Court Reporter, (U. S.) 797, decided May 17, 1937, in which it is held that:

"Constitution forbids application of any new punitive measure to crime already consummated to detriment or material disadvantage of wrongdoer, and hence increase in possible penalty is ex post facto, regardless of length of sentence actually imposed."

It is not necessary for us to analyze this case in detail but it seems to us to dispose of any question that may exist as to the right of the Public Welfare Department to increase the burden imposed upon the prisoner after the commission, trial and sentence for his crime and it appears beyond question that §2210-2 GC was not effective until after the commission and sentence of Flora.

We must therefore hold that he is now illegally confined in the Prison Farm at London and should be reconveyed to Mansfield, there to con tinue in confinement under the provisions of the original sentence and that he is entitled to such consideration as to parole as may legally attach to those who are sentenced to the Reformatory for an indeterminate period. Counsel has suggested and it is possible that the statutes would permit under certain conditions, the discharge of the petitioner in the habeas corpus case from confinement, but we are not so disposed to order. He was convicted of a serious offense and due to his immature years was given an indeterminate sentence, which he now maintains was legal and in effect.

However, in the mandamus case we think the relator has stated a good cause of action and is entitled to the relief prayed for. But in that case we are only hearing it upon a demurrer, which we now overrule. As a consequence, the defendants in the mandamus suit have an undoubted right to file an answer if they have any facts contrary to the allegations of the petition, which would justify a denial of its prayer. We therefore hold, as to the mandamus case, that the defendants be granted ten days leave in which to file an answer and failing for that period, that the prayer of the petition in mandamus be granted.

BARNES, PJ, and HORNBECK, J, concur.